UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CR-00499-FL-1

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIE LEE HAYES, JR. | DEFENDANT'S<br><br>SENTENCING MEMORANDUM |

The Defendant, Willie Lee Hayes, Jr. ("Mr. Hayes"), by and through undersigned counsel, submits this memorandum in support of his objections to the final Presentence Report (PSR). *See* D.E. 65–66. Because §2K2.1(c)'s cross reference does not apply in this case, the guideline range for Count Five should be 15–21 months. Additionally, Mr. Hayes submits this memorandum in support of an overall sentence that is sufficient, but not greater than necessary, to the serve the goals of sentencing. In further support, he states as follows:

<u>GUIDELINE OBJECTION: THE CROSS REFERENCE DOES NOT APPLY.</u>

On November 5, 2020, a grand jury sitting in this district indicted Mr. Hayes for: (i) carjacking, in violation of 18 U.S.C. § 2119; (ii) possessing and brandishing a firearm during and in relation to a crime of violence (carjacking), in violation of 18 U.S.C. § 924(c)(1)(A)(ii); (iii) stealing a firearm, in violation of 18 U.S.C. § 924(l); (iv) possessing a stolen firearm, in violation of 18 U.S.C. § 922(j); and (v) possessing a firearm after knowing he had previously been convicted of a crime punishable by a term of imprisonment in excess of one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924. *See* D.E. 19. Pursuant to a written agreement with the government, Mr. Hayes pled guilty to Count Two ("the 924(c)") and Count Five ("the 922(g)") in January 2022. *See* D.E. 58.

1

Case 5:20-cr-00499-FL   Document 73   Filed 01/13/23   Page 1 of 18

The United States Probation Office has prepared a Presentence Investigation Report (PSR), which recommends that the Court calculate the guideline range of imprisonment for the 922(g) to be 97–120 months. *See* PSR at ¶ 98. This range stems from the Probation Office's decision to cross reference the determination of Mr. Hayes's offense level from USSG §2K2.1, the guideline normally applicable to violations of § 922(g), to §2A4.1, the guideline applicable to kidnapping offenses. *See* USSG, App'x A. Application of the cross reference would cause Mr. Hayes's adjusted offense level for the 922(g) to *double* from 16 to 32.

For two separate reasons, however, the Probation Office is wrong. First, the 84-month sentence Mr. Hayes must receive for the § 924(c) precludes application of the cross reference. Second, because the charging document does not specifically cite, "in the [922(g)] offense of conviction," the *particular* firearm alleged to have been used in connection with the other offense, the cross reference cannot apply. *See* USSG §2K2.1(c)(1). The Court should therefore sustain Mr. Hayes's objection to the application of §2K2.1(c)'s cross reference.

### *(I) The 924(c) Conviction Precludes Application of the Cross Reference.*

In addition to whatever sentence is imposed for the 922(g), Mr. Hayes also faces a mandatory minimum sentence of 84 months (7 years) for the 924(c). It is undisputed that the guideline range of imprisonment for the 924(c) is the "minimum term of imprisonment required by statute," i.e. 84 months. *See* USSG §2K2.4(b). Furthermore, the sentence for the 924(c) must run consecutive to whatever sentence the Court imposes for the 922(g). *See* 18 U.S.C. § 924(c)(1)(D)(ii) (stating that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person").

Given the harsh nature of these penalties, the commentary to §2K2.4 provides that "[i]f a sentence under this guideline is imposed in conjunction with a sentence for an underlying

2

offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense." §2K2.4, comment. (n.4). The reason, according to the Sentencing Commission, is that "[a] sentence under [§2K2.4] accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct)."

Here, while the "underlying offense" for purposes of the 924(c) is admittedly the carjacking offense, rather than the 922(g), §2K2.4's commentary goes further to clarify that the imposition of a sentence under the guideline *still* precludes application of an enhancement under §2K2.1 in some circumstances. Specifically, Application Note 4 states as follows:

> If the explosive or weapon that was possessed, brandished, used, or discharged in the course of the underlying offense also results in a conviction that would subject the defendant to an enhancement under . . . §2K2.1(b)(6)(B) (pertaining to possession of any firearm or ammunition in connection with another felony offense), do not apply that enhancement. A sentence under this guideline accounts for the conduct covered by th[at] enhancement[] because of the relatedness of that conduct to the conduct that forms the basis for the conviction under . . . § 924(c) . . . . For example, if in addition to a conviction for an underlying offense of armed bank robbery, the defendant was convicted of being a felon in possession under 18 U.S.C. § 922(g), the enhancement under §2K2.1(b)(6)(B) would not apply.

USSG §2K2.4, comment. (n.4).

Ignoring this guidance, the Probation Office has recommended that the Court apply an enhancement for using the firearm in connection with another felony under §2K2.1 *in addition* to imposing the required 7-year consecutive sentence for the 924(c) that accounts for the same conduct. The Probation Office acknowledges that "application of firearms enhancements when determining the offense level for an underlying offense is specifically prohibited in order to

prevent impermissible double counting." D.E. 66 at 22. "However, [because] there is no *specific* prohibition on the application of a *cross-reference* to a more serious underlying offense[, as opposed to the §2K2.1(b)(6)(B) enhancement,]" the Probation Office has applied §2K2.1(c)'s cross reference. *Id.* (emphases added). The Probation Office reads Application Note 4 too narrowly.

*(A) Enhancements: Specific Offense Characteristics <u>and</u> Cross References.*

At bottom, the question generally hinges on whether, under §2K2.4, the term "enhancement" encompasses both "cross references" and "specific offense characteristics," or just the latter. If §2K2.1(c)'s cross reference is an "enhancement," then the portion of §2K2.4's commentary cited above clearly precludes application of §2K2.1(c) in Mr. Hayes's case.

The guidelines do not define "enhancement" or "specific offense characteristic." The term "cross reference" is defined as "an instruction to apply another offense guideline." *See* USSG §1B1.5(a). However, that definition does little to help answer the question here, i.e. whether a cross reference qualifies as an "enhancement."

In the introductory commentary explaining the hybrid "real offense vs. charge offense" approach of the guidelines, the Commission explained how the guidelines have a real offense element in that they "take account of a number of important, commonly occurring real offense elements such as role in the offense, the presence of a gun, or the amount of money actually taken, *through alternative base offense levels, specific offense characteristics, cross references, and adjustments*." USSG Ch. 1, Pt.A, intro. comment. (emphasis added). Similarly, the guidelines instruct courts to "[d]etermine the base offense level and apply any appropriate specific offense characteristics, cross references, and special instructions contained in the particular guideline in Chapter Two in the order listed." §1B1.1(a)(2).

From these and other provisions in the guidelines, it is clear that the Commission promulgated specific offense characteristics and cross references for the same purpose: to differentiate an offender's particular conduct in committing any given offense from that of other offenders committing the same offense. *See United States v. Romero*, 293 F.3d 1120, 1124 (9th Cir. 2002) (stating that, "[a]fter [an] offense guideline is selected," the relevant conduct guideline "is applied to *capture the real offense behavior* and the characteristics of the defendant through specific offense characteristics *and* cross references" (emphases added)). As such and over the years, courts have referred to both terms collectively as "enhancements." *See, e.g.*, *United States v. Rich*, No. 18-2268, 2021 WL 4144059, at *49 (6th Cir. Sept. 13, 2021) (referring to "the application of three sentence enhancements for specific offense characteristics"); *United States v. Kohlmeier*, 858 F. App'x 444, 445 (2d Cir. 2021) (referring to "specific offense characteristic enhancements"); *United States v. Dumitru*, 991 F.3d 427, 435 (2d Cir. 2021) (referring to a specific offense characteristic as an enhancement); *United States v. McPherson*, 756 F. App'x 282 (4th Cir. 2018) (referring, throughout the opinion, to §2K2.1(c)(1)'s cross reference as an "enhancement"); *United States v. Anderson*, 795 F.3d 613 (6th Cir. 2015) (referring to USSG §2D1.1(d)(1) as "the murder cross-reference enhancement"); *United States v. Grimes*, 348 F. App'x 138, 139 (6th Cir. 2009) (describing the §2K2.1(c)(1) cross reference as "enhanc[ing] the offense level if another substantive offense was committed that was more serious").

Specific offense characteristics and cross references are thus both guideline "enhancements" that serve the same purpose, to wit: make the penalties harsher. And as such, §2K2.4's Application Note 4 limits the application of *both* specific offense characteristics and cross references—since both are "enhancements." Though the Fourth Circuit does not appear to have addressed this issue in a *published* opinion yet, the Eleventh Circuit has. *But see United*

*States v. Palmer*, 62 F. App'x 489, 491 (4th Cir. 2003) (per curiam) (unpublished) (concluding that the note solely limits application of a specific offense characteristic, rather than a cross reference, because it does not "specifically" cite §2K2.1's cross reference).

*(B) Flennory, Brown, and Amendment 599.*

In *United States v. Flennory*, the Defendant pled guilty to one § 922(g) count and one count of possessing a firearm in furtherance of a drug trafficking crime, in violation 18 U.S.C. § 924(c). *See* 145 F.3d 1264, 1265 (11th Cir. 1998). At sentencing, the district court applied §2K2.1(c)'s *cross reference*, even though it was simultaneously sentencing the Defendant under § 924(c) for the same conduct. *Id.* at 1267. Rejecting the Defendant's argument that doing so constituted impermissible "double counting," the court held that the § 922(g) violation was not "the underlying offense" for purposes of the § 924(c), and as such, §2K2.4's Application Note 4, as written at that time,[1] did not preclude application of the cross reference in conjunction with the imposition of a sentence under § 924(c). *Id.* at 1269.

Two years later, with the desire to eliminate "the duplicative punishment that results when sentences are increased under both the statutes and the guidelines for substantially the same harm," as was the case in *Flennory*, the Sentencing Commission amended §2K2.4's commentary. *See* USSG App. C, amend. 599 (effect. Nov. 1, 2000) (specifically citing *Flennory* in the "Reason for Amendment"). The Commission sought "to clarify under what circumstances defendants sentenced for violations of 18 U.S.C. § 924(c) in conjunction with convictions for other offenses may receive weapon enhancements contained in the guidelines for those other offenses." USSG App. C, amend. 599.

---

[1] Under the Guidelines Manual in effect at the time of the Defendant's sentencing in *Flennory*, §2K2.4's Application Note 2 contained the advice as to when courts should refrain from applying enhancements in guidelines for underlying and related offenses. *See* United States Sentencing Commission, *Guidelines Manual*, §2K2.4 (n.2) (Nov. 1995)

To that end, it added the quoted paragraph set forth above to Application Note 4. This paragraph informed courts that "no guideline weapon enhancement should be applied when determining the sentence for the crime of violence or drug trafficking offense underlying the 18 U.S.C. § 924(c) conviction, *nor for any conduct with respect to that offense for which the defendant is accountable under §1B1.3 (Relevant Conduct)*." *Id.* (emphasis added).

Five years after *Flennory* and three years after Amendment 599's promulgation, the Eleventh Circuit again considered this issue in *United States v. Brown*, 332 F.3d 1341 (11th Cir. 2003). In *Brown*, the Defendant had similarly pled guilty to a § 922(g) count and a § 924(c) involving a drug trafficking crime. *Id.* at 1342. In calculating the guideline range for the 922(g), the district court applied a specific offense increase under §2K2.1 for the gun being used in connection with a drug trafficking crime, even though the defendant was simultaneously being sentenced for that same conduct under § 924(c). *Id.* at 1342–43.

Applying Amendment 599, which was deemed retroactive by the Commission, the Eleventh Circuit reversed the district court. *See id.* at 1346. Specifically, the *Brown* court held that, regardless of what constituted the "underlying offense" for purposes of § 924(c), the new language in Application Note 4 introduced by Amendment 599 precluded application of an enhancement under §2K2.1 for using the firearm in connection with another felony when a defendant is simultaneously being sentenced under § 924(c) for the same conduct that would otherwise form the basis of the §2K2.1 enhancement. *Id.* The reason, according to *Brown*, is that the new text from Amendment 599 clearly signaled the Commission's desire to "equate the[se] wrongs" and "require the election of one or the other." *Id.*; *see also id.* at 1345 n.6 (recognizing that "Amendment 599 abrogated *Flennory*").

Even though *Brown* involved whether sentencing a defendant under § 924(c) precluded application of a *specific offense characteristic* under §2K2.1 for the same conduct underlying the § 924(c), its logic and reasoning compel the same result in a case that involves the *cross reference*, such as *Flennory* and here. Reading Amendment 599, one must remember that "cross references" and "specific offense characteristics" are both "enhancements," whose purpose is to differentiate one offender's particular conduct in committing a given offense from that of another committing the same offense. *See* USSG Ch. 1, Pt.A, intro. comment. (discussing the "real offense" approach incorporated by the guidelines).

Amendment 599 was promulgated to "equate the wrongs being punished by" an enhancement for a defendant's use of a firearm in connection with another offense "and a § 924(c) sentence [for the same conduct] and require the election of one or the other." *Brown*, 332 F.3d at 1346. Doing so ensures that a defendant does *not* receive "duplicative punishment that results when sentences are increased under both the statutes and the guidelines for substantially the same harm," i.e. using a firearm in connection with another offense. USSG App. C, amend. 599. Thus, to say that the Amendment solely applies to specific offense characteristics, rather than cross references as well, would be to ignore the Commission's clearly stated purpose in promulgating the amendment. *See United States v. Stokes*, 347 F.3d 103, 105 (4th Cir. 2003) (stating that courts should interpret guidelines using the "ordinary rules of statutory construction," including considering the "language, structure, and *purpose*" of the guideline (emphasis added) (citation and quotation marks omitted)).

For these reasons, this Court should follow Amendment 599's guidance and, in calculating Mr. Hayes's offense level for the 922(g), *decline* to apply either the cross reference or specific offense characteristic under §2K2.1 for Mr. Hayes's use of the firearm at issue in

connection with another offense. The 7-year sentence under § 924(c) that must run consecutive to whatever sentence the Court imposes upon him for the 922(g) more than adequately accounts for that harm.

### *(II) Because the Indictment does not Cite the Firearm Used in Connection with the Other Offense, the Cross Reference Cannot Apply.*

Even if Amendment 599 did not preclude application of §2K2.1's specific offense characteristic or cross reference for using the firearm in connection with another offense, the cross reference still cannot apply because no firearm has been "cited in the offense of conviction" for the 922(g). *See* §2K2.1(c)(1).

#### *(A) Overview of §2K2.1(b)(6)(B) and (c)(1).*

§2K2.1(b)(6)(B) calls for a 4-level enhancement to the offense level when the defendant "used or possessed any firearm . . . in connection with another felony offense." Subsection (c)(1) similarly calls for increased sentencing accountability when the defendant used a firearm "in connection with the commission or attempted commission of another offense." However, subsection (c)(1) differs from subsection (b)(6)(B) in three major ways.

First, the other offense need not be a felony for subsection (c)(1) to potentially apply. Second, instead of providing an offense level increase under §2K2.1, subsection (c)(1), if applicable, shifts the offense level determination from §2K2.1 to an entirely different Chapter Two offense guideline—if the resulting offense level under said guideline is higher than that resulting from application of subsections (a) and (b) of §2K2.1. *See* §2K2.1(c)(1) (stating that the cross reference only applies if, after application of the guideline for the other offense at issue, "the resulting offense level is greater than that determined above," i.e. under subsections (a) and (b) of §2K2.1). Lastly, "subsection (c)(1) contains the additional requirement that the firearm or ammunition be cited in the offense of conviction." §2K2.1, comment. (n.14).

The Sentencing Commission added this last requirement to §2K2.1(c)(1) in 2014 through Amendment 784, which "was prompted in part because circuits ha[d] been following a range of approaches in determining whether these provisions apply." USSG App. C, amend. 784 (effect. Nov. 1, 2014). Specifically, the Commission wanted to resolve two matters. First, it clarified that "[s]ubsections (b)(6)(B) and (c)(1) are not intended to apply only when the other . . . offense is a 'groupable' offense." *Id.* Second, and relevant here, the Commission wanted to limit the scope of subsection (c)(1) by requiring the instant §2K2.1 offense and the other offense to "be related to each other by, at a minimum, having an identifiable firearm in common." *Id.* To accomplish this goal, the Commission "revise[d] the cross reference so that it applies only to the particular firearm or firearms cited in the offense of conviction." *Id.*

Though Amendment 784 did not define the phrase "cited in the offense of conviction," the Commission did not need to, as the guidelines had already defined it elsewhere. Specifically, §1B1.2—which instructs the Court to determine the applicable Chapter Two offense guideline section by referencing the Statutory Index (Appendix A) indicating which guideline sections apply to certain counts—defines "offense of conviction" as "the offense conduct charged in the count of the indictment or information of which the defendant was convicted." §1B1.2(a). Thus, for the §2K2.1(c)(1) cross reference to apply, Amendment 784 and §1B1.2, read together, require the *particular* firearm at issue to be cited in the count of the indictment or information of which the defendant was convicted. *See United States v. Gordillo*, 920 F.3d 1292, 1299 (11th Cir. 2019) (explaining that "[w]here the same language appears in two guidelines, it is generally presumed that the language bears the same meaning in both" (quoting *United States v. Perez*, 336 F.3d 1178, 1182 (11th Cir. 2004))).

The term "cite" means "to bring forward or call to another's attention especially as an example, proof, or precedent" or "to *name* in a citation." *See* "Cite," Merriam-Webster.com, accessed Jan. 8, 2023, available at https://www.merriam-webster.com/dictionary/cite (emphasis added); *see also United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010) (stating that "[a] statute's plain meaning is determined by reference to its words' 'ordinary meaning at the time of the statute's enactment'" (quoting *United States v. Simmons*, 247 F.3d 118, 122 (4th Cir. 2001))). This definition thus undoubtedly requires specificity as to the firearm referenced in the charging instrument, rather than generality. As such, to give legal effect to the Commission's decision to use the term "cited" in subsection (c)(1), the requirement must mean that the count of conviction needs to specifically list identifying information for the *particular* firearm alleged to have been used in connection with the other offense, e.g. the firearm's make, model, and/or serial number. *See Campbell v. Hampton Roads Bankshares, Inc.*, 925 F. Supp. 2d 800, 808 (E.D. Va. 2013) (stating that courts "must give meaning to every word of [a] statute, not reading any word out or treating it as surplusage" (citing *United States v. Pressley*, 359 F.3d 347, 350 (4th Cir. 2004))).[2]

Lastly, to the extent there is any ambiguity as to this question of interpretation, the Court should apply the rule of lenity in favor of finding that subsection (c)(1) requires the firearm's identifying information to be specifically included in the language of the charging instrument. *See United States v. Bass*, 404 U.S. 336, 347 (1971) (reaffirming that "ambiguity concerning the

---

[2] As to this issue, Mr. Hayes acknowledges the Fourth Circuit's decision contrary to his position in *United States v. Aberant*, 741 F. App'x 905, 908 (unpublished), *cert. denied*, 139 S. Ct. 577 (2018), as well as the Eighth Circuit's decision holding the same in *United States v. Edger*, 924 F.3d 1011, 1014–15 (8th Cir. 2019), as amended (May 16, 2022). However, based on the above analysis, he respectfully disagrees with these holdings and emphasizes that such decisions are not binding on this Court. *See* Local Criminal Rule 47.2(d) (stating that unpublished decisions from the United States Circuit Court of Appeals do "not bind this court").

ambit of criminal statutes should be resolved in favor of lenity" (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971))).

*(B) Charging Practices and the Fifth and Sixth Amendments.*

The government may claim that requiring the language of the charging instrument to specifically name the make, model, and/or serial number of a firearm for which it intends to seek application of the §2K2.1(c) cross reference imposes a heightened charging obligation which conflicts with the principle that an indictment or information is generally sufficient if it "merely tracks the statutory language." *United States v. Am. Waste Fibers Co.*, 809 F.2d 1044, 1046 (4th Cir. 1987). However, the Sentencing Commission's addition of the "cited in the offense of conviction" requirement to §2K2.1(c) actually comports with the Supreme Court's Fifth and Sixth Amendment jurisprudence.

For example, the Supreme Court has already held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be" contained in the charging instrument, "submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *see also Alleyne v. United States*, 570 U.S. 99, 104, 116 (2013) ("holding that [the Sixth Amendment, 'in conjunction with the Due Process Clause, requires'] facts that increase mandatory minimum sentences [to] be submitted to the jury" and proved beyond a reasonable doubt). *Apprendi* and *Alleyne* are rooted in an understanding of the "intimate connection" between the facts of a crime and the "linkage of [such] facts with particular sentencing ranges." *See Alleyne*, 570 U.S. at 109. At common law, what followed from this understanding was "a well-established practice of including in the indictment, and submitting to the jury, every fact that was a basis for imposing or increasing punishment." *Id.* at 109–10.

Thus, the practice of specifically including, in the charging document, facts that increase the potential sentencing exposure of a defendant is far from novel or unwarranted. And while "an indictment that merely tracks the statutory language is *ordinarily* valid[,]" *Am. Waste Fibers Co.*, 809 F.2d at 1046 (emphasis added), a particular fact that is "by law the basis for . . . increasing the prosecution's entitlement" to more severe punishment "is an element" which must be specifically included in the charging instrument. *See Apprendi*, 570 U.S. at 521 (Thomas, J., concurring). This legal development is what requires charging documents, in drug trafficking prosecutions, to allege specific quantities of controlled substances for which a defendant should be held accountable at sentencing, *see, e.g.*, *United States v. Harakaly*, 734 F.3d 88, 95 (1st Cir. 2013) (acknowledging the parties' agreement that "because the drug quantity that triggered the mandatory minimum sentence was not alleged in the indictment or stipulated by [the defendant] at the time of his guilty plea, the district court's drug-quantity finding constituted *Alleyne* error"), as well as, in 18 U.S.C. § 924(c) prosecutions, whether a firearm was brandished or discharged such that the defendant must face increased mandatory minimum penalties under that statute. *See Alleyne*, 570 U.S. at 117.

Mr. Hayes understands that *United States v. Booker* affects the *direct* applicability of the above Sixth Amendment principles to the potential operation of USSG §2K2.1(c) in this case. *See* 543 U.S. 220, 259 (2005) (noting that the Court's decision to render the guidelines advisory, as opposed to "mandatory," takes the guidelines beyond "the scope of *Apprendi's* requirement" that facts increasing a statutory maximum sentence must be submitted to a jury and proved beyond a reasonable doubt). Even so, the policies underlying these rules translate to the context of §2K2.1(c), a very serious sentencing enhancement under the guidelines. *See Apprendi*, 530 U.S. at 511 (Thomas, J., concurring) (stating that the "notice and indictment requirements ensure

that before persons held for crimes . . . shall be convicted, there shall be an allegation made against them of every element of crime which the law makes essential to the punishment to be inflicted" (citation and quotation marks omitted)).

During the 2013–14 Amendment Cycle in which Amendment 784 was promulgated, the Sentencing Commission would have been very aware of *Apprendi* and its progeny. *See, e.g.*, U.S. Sentencing Comm'n, *Final Report on the Impact of* United States v. Booker *on Federal Sentencing* at 9–11, March 2006, *available at* https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/submissions/200603-booker/Booker_Report.pdf (discussing *Apprendi* and "The Supreme Court's Developing Sixth Amendment Jurisprudence"). As such, this Court should assume that the Commission had these principles in mind when promulgating §2K2.1(c)'s "cited in the offense of conviction" requirement. *See Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1072 (2020) (stating that the Supreme Court "normally assume[s] that Congress is 'aware of relevant judicial precedent' when it enacts a new statute" (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010))). This realization similarly leads to the conclusion that, if the government seeks application of the §2K2.1(c) cross reference in a given case, it must particularly describe the firearm's identifying information in the language of the charging instrument.[3]

*(C) No Firearm "Cited in the Offense of Conviction" for the 922(g).*

Here, the § 922(g) count of the indictment to which Mr. Hayes pled guilty does not give any "particular" details pertaining to a gun. *See* D.E. 19 at 3. Instead, it generically refers to Mr.

---

[3] The practice of specifically listing a firearm's identifying information in the language of the indictment is not uncommon for 18 U.S.C. § 922(g) prosecutions initiated by the government in this district. *See, e.g.*, *United States v. Preston Stavon Bullock*, No. 2:11-cr-00017-D-1 at D.E. 1 (indictment specifically alleges the make, model, and caliber of firearm alleged to have been possessed); *United States v. Andrew J. Ittenbach*, No. 5:14-cr-00268-FL-1 at D.E. 10 (same).

Hayes having possessed a "firearm." *Id.* Because this general reference does not satisfy the "cited in the offense of conviction" requirement discussed above, the cross reference does not apply.

### *(III) Conclusion.*

For the two reasons discussed above, §2K2.1(c)'s cross reference does *not* apply in Mr. Hayes's case. The Court should therefore sustain Mr. Hayes's objection to the application of the cross reference and calculate his §2K2.1 offense level to be 13, rather than 29. The guideline range for the 922(g) should thus be 15–21 months.

## THE § 3553(A) FACTORS AND USSG §5G1.3(C)

As the Court is aware, the calculation of the advisory guideline range applicable to any given case is merely the first step in the sentencing process. *United States v. Blue*, 877 F.3d 513, 517 (4th Cir. 2017). Once this Court establishes the guideline range, it must then consider the factors set forth in 18 U.S.C. § 3553(a) regarding what sentence is ultimately "sufficient, but not greater than necessary," to serve the goals of sentencing. *See Gall v. United States*, 552 U.S. 38, 49–50 (2007).

These factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court must also consider "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[,]" as well as its need to deter criminal conduct, "protect the public from further crimes of the defendant[,] and . . . provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *Id.* § 3553(a)(2). Finally, the Court must consider the kinds of sentences available, the advice of the guidelines, the need to provide restitution to any victims, and "the need to avoid unwarranted

sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(3)–(7).

The Court "must make an individualized assessment [of these factors] based on the facts presented." *Gall*, 552 U.S. at 50. One such factor Mr. Hayes asserts as particularly important in his case is the substantial likelihood that Mr. Hayes will serve a *significant* term of imprisonment imposed in Wake County Superior Court for the same conduct at issue in this case.

This conduct occurred on October 6, 2020. Mr. Hayes was arrested and charged with various offenses by the State of North Carolina that same day, including attempted murder and kidnapping. *See* PSR, ¶ 51. He was given a secured bond of $2,050,000 for these charges and has remained in state custody at the Wake County Detention Center in Raleigh, North Carolina since his arrest.

Mr. Hayes was not federally arrested for the charges in this case until October 9, 2020. As such, all of Mr. Hayes's court appearances in this district have been made via writ of habeas corpus, and he remains in the primary custody of the State of North Carolina even as this case is scheduled to conclude on January 20, 2023. *See, e.g.*, D.E. 70–71 (application and order for writ of habeas corpus ad prosequendum as to Mr. Hayes).

Undersigned counsel does *not* represent Mr. Hayes in his Wake County charges and cannot say, with certainty, how they will be resolved. However, based upon information provided to the undersigned, it is *believed* that these charges will likely be disposed in a manner requiring Mr. Hayes to serve a significant sentence of imprisonment in the custody of the North Carolina Department of Adult Correction. Given this expectation, Mr. Hayes directs this Court's attention to USSG §5G1.3(c), which provides that:

> [i]f . . . a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of

> conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment.

Based upon this authority, Mr. Hayes requests that whatever sentence this Court imposes upon him be allowed to run concurrently to the sentence that is anticipated to be imposed upon him by the State of North Carolina.

Finally, Mr. Hayes and undersigned counsel will be prepared to expound upon his history, characteristics, and the remaining § 3553(a) factors at sentencing,[4] For now, he submits this memorandum in support of his guideline objections and to alert the Court as to a very significant § 3553(a) factor in this case concerning Mr. Hayes's related state charges.

Respectfully submitted this 13th day of January, 2023.

*/s/ Marshall H. Ellis*
MARSHALL H. ELLIS
Hornthal, Riley, Ellis & Maland, LLP
301 East Main Street
Elizabeth City, NC 27909
Telephone: 252-335-0871
Fax: 252-335-4223
Email: mellis@hrem.com
N.C. State Bar No. 47720
Appointed Counsel for the Defendant

---

[4] The undersigned has contemporaneously filed, under seal with this Court, a character submitted on Mr. Hayes's behalf by a long-time friend of his, Broderick Daniels.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served upon:

JAKE D. PUGH
United States Attorney's Office - EDNC
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
919-856-4530
Email: jacob.pugh@usdoj.gov

by electronically filing the foregoing with the Clerk of Court on January 13, 2023, using the CM/ECF system which will send notification of such filing to the above.

    This the 13th day of January, 2023.

                      ***/s/ Marshall H. Ellis***
                      MARSHALL H. ELLIS
                      Hornthal, Riley, Ellis & Maland, LLP
                      301 East Main Street
                      Elizabeth City, NC 27909
                      Telephone: 252-335-0871
                      Fax: 252-335-4223
                      Email: mellis@hrem.com
                      N.C. State Bar No. 47720
                      Appointed Counsel for the Defendant